OVERTON, J.
 

 These consolidated suits were instituted by plaintiffs for the purpose of annulling a special tax of 2 mills on the dollar, voted by the duly qualified property tax payers of a school district, composed of the entire parish of Webster, on the assessed value of all property subject to taxation therein.
 

 The first suit instituted was the one filed by the Louisiana & Arkansas Railway Company. This suit seeks to annul the tax on the ground that it increases the special taxes on property in the Heflin School district, beyond 25 mills on the dollar, in violation of section 10 of article 10 of the Constitution of 1921, and moreover, that said tax, in said district, and also in the Doyline school district, and in Hortman school district A, makes the special taxes for additional support to the public schools, in said districts, exceed 8 mills on the dollar, in violation of said section of the Constitution. In the alternative, plaintiffs ask that, should said special tax of 2 mills on the dollar be de
 
 *1049
 
 dared legal, then a spedal tax of 5 mills, voted in said Hortman school district A on the same day that said 2-mill tax was voted, be declared null, as being in violation 9f the same section of the Constitution.
 

 The Gulf Befining Company of Louisiana, in its suit as originally filed by if, sought to annul the 2-mill tax on the ground that the school board had no right to call an election throughout the entire parish fo!r the voting of the fax, and hence, as it exercised a right which it did not have, that the tax is null. Later, the Gulf Refining Company adopted the allegations of the petition of the Louisiana & Arkansas Railway Company, though it still insists on the alleged ground of nullity first asserted by it. Both suits were put at issue.
 

 With respect to what may be termed the first phase of the case, the evidence introduced shows that, in 1919, the school- board of Webster parish made the entire parish a school district, and gave it the name of the Webster parish school district, and that, in April of that year, the property tax payers of the newly created district voted a 5-mill táx for the support of the public schools thereof. This is the only special tax which had been voted and was being levied by the district at the time it voted and levied the 2-mill tax, in controversy. Adding the 2-mill tax to the 5-mill tax makes the total tax, voted- by the taxpayers of the district and now being levied for the support of the public schools thereof, 7 mills on the dollar.
 

 The evidence also shows that in June, 1922, the property tax payers of road district No. 2, which district, we infer, includes the Heflin school district, voted a special tax of 5 mills on the dollar on all property subject tp taxation in said road district, for the purpose of constructing and maintaining roads and bridges therein. The evidence further shows that the property tax payers of the Heflin school district in January 1920, voted a tax of 5 mills on the dollar, to run for a period of seven years, for the purpose of building a schoolhouse in said district, and that in July of the same year, when there was no restriction on the millage that could be voted for school purposes, they voted a tax of 10 mills on the dollar, to run for a period of 10 years, for the purpose of constructing and equipping a school building in said district. If we add to the 15 mills voted by the district, which plaintiffs contend we should, the 7 mills voted by the Webster Parish school district, and to the sum thus obtained, the 5-mill road and bridge tax voted by road district No. 2 the sum will show, including the tax in controversy, a total of special taxes, which are being levied by various political subdivisions on property in the district, voted under section 10 of article 10 of the Constitution of 1921, and under the corresponding article of the Constitution of 1913, of 27 mills on the dollar.
 

 Section 10 of article 10 of the Constitution of 1921, under which the 2-mill tax in controversy was voted, in so far as pertinent, reads:
 

 “For the purpose of constructing or improving public buildings, school houses, roads, bridges, levees, sewerage or drainage works, or other works of permanent public improvement, title to which shall be in the public, or for the maintenance thereof, any political subdivision may levy taxes, in excess of the limitations otherwise fixed in this Constitution, not to exceed in any year five mills on the dollar for any one of said purposes, and not to exceed in any year twenty-five mills on the dollar, on any property, for all of said purposes; and for giving additional support to public schools, any parish, school district or sub-school district, or any municipality, which supports, or contributes to the support of, its public schools, may levy taxes, in excess of the limitations otherwise fixed in this Constitution, not to exceed, in the aggregate, on any property, in any year, eight mills on the dollar; provided, no special tax authorized by this section shall run for a longer period than ten years, and, provided further, that the rate, purpose and duration of any such special tax shall have been submitted
 
 *1051
 
 to the resident property tax payers qualified to vote in the subdivision in which the tax is to be levied, and a majority of those voting, in number and amount, shall have voted in favor thereof. The provisions of this section shall not affect the validity of any tax levied by authority of an election held prior to the adoption of this Constitution. * * * ”
 

 Plaintiffs’ first position is that the limitation of 25 mills on the dollar, prescribed in the foregoing section of the Constitution, is a limitation for all purposes, and even includes the 8-mill limitation prescribed in the section for additional support to the public schools, and plaintiffs therefore argue that, as the total of the special taxes, which are being levied on the assessed valuation of property in the Hortman school district by the several political subdivisions named, when the 2-mill tax in controversy is included, exceeds 25 mills on the dollar, the levy of said 2-mill tax contravenes said limitation, and is therefore null and void.
 

 Plaintiffs commit two errors, in our view, when they take the foregoing position. The first is in assuming that the taxes, levied by the several political subdivisions named, should be added together in order to ascertain whether or not the limitation of 25 mills, contended for by them, has been exceeded in levying the 2-mill tax. The section of the Constitution which we have quoted, in so far as it is pertinent, does not contemplate that such a course should be pursued in ascertaining whether the limitation has been reached. To the contrary, the section contemplates that each political subdivision authorized to levy the tax provided by it shall be treated as a distinct entity throughout, and that the limitations imposed shall apply to each subdivision as a distinct entity, and hence that each subdivision shall remain unaffected in its right by the taxes imposed under the section by other political subdivisions in the same territory. See Hinton v. Winn Parish School Board, 155 La. 666, on page 673, 99 South. 523, on page 525. For instance, a parish, when authorized by the taxpayers in the manner prescribed, may levy faxes for the purposes named in the section, not to exceed for any one purpose in any year 5 mills on the dollar, and not to exceed in any year 25 mills on the dollar on any property for all of said purposes, and a municipality or any other political subdivision may do likewise, although the parish in which it is located may have reached its limitation, and the parish may do likewise, although the municipality or school district within it has reached its limitation. Were it otherwise, a municipality, for instance, which desired to vote a special tax under the section .for the purpose of erecting a town hall, or a school district, which desired to vote such a tax to build a schoolhouse, might find itself unable to do so, simply because the parish in which it happened to be located had reached the limitation on special taxation imposed by the section for all purposes named in it. The constitutional convention intended no such situation or result, nor do we think that the section, when analyzed, admits of an interpretation that would bring such a situation or result about, yet an interpretation that would bring it about is necessary in order to sustain plaintiffs’ position.
 

 Moreover, plaintiffs’ position cannot be sustained for the reason that in order to do so we would have to hold that the limitation of 8 mills on the dollar, imposed by the section, for additional support to public schools is included in the limitation of 25 mills. This we are unable to do, for, by the plain words of the Constitution, the latter limitation does not relate to additional support for public schools, but to the purposes specified in the beginning of the section.
 

 Plaintiffs’ second position involves the error discussed above, with respect to the adding together of the taxes of several districts, for the purpose of ascertaining whether the
 
 *1053
 
 limitations imposed by tbe section have been reached in a given instance. Their position is that should we hold, which we have, that the limitation of 8 mills is not included in that of 25 mills, but is, in effect, a raising of the latter limitation in order to enable certain political subdivisions to provide additional support for the public schools, then that the limitation of 8 mills, for additional support for the schools, has been violated by the levy of the 2-mill tax in controversy, and in the alternative that a 5-mill tax voted by the Hortman district for the support of the schools therein, on the same day that the 2-mill tax, in contest, was voted, violates that limitation.
 

 Arguing in support of that position, plaintiffs point out that, in the Heflin school district, prior to the adoption of the present Constitution, when there was no restriction as to the number of mills on the dollar that could be voted for school purposes, the district voted a 10-mill tax, which is still being levied, for building and equipping a schoolhouse therein. Plaintiffs argue that “equipping” properly comes under the head of “additional support” to public schools, and that, if the school board appropriated as much as 3 mills on the dollar of this tax for the purpose of equipping the schoolhouse, these when added to the 5-mill tax previously voted by the Webster Parish school district for the support of the schools of the district, exhaust the amount of the tax permitted for support, and therefore make the 2-mill tax in controversy, voted by the latter district, violative of the 8-mill limitation imposed by section 10 of article 10 of the present Constitution. Plaintiffs also point out that in the Doyline school district in May, 1923, a tax of 3 mills was voted by the district for the purpose of supporting the school therein, and of making an addition to the school building, and, while they do not attack the legality of this tax, they argue that; inasmuch as one-half of it is appropriated for the support of the school in the district, this half added to the 5-mill tax voted in the Webster Parish school district, for the support of the schools of the entire parish, makes the tax therein for school support
 
 7Yz
 
 mills on the dollar, and hence that, when the 2-mill tax in controversy is added to those taxes, the sum obtained is such as to make the 2-mill tax violative of said section 10 of article 10 of the Constitution. And, with respect to the Hortman school district, it is also argued that a 5-mill tax for the support of the public schools therein, voted on the same day that the 2-mill tax in controversy was voted by the Webster Parish school district, when added to the 5-mill tax for the support of the schools of the parish previously voted by the latter district, makes said 2-mill tax violative of the 8-mill limitation imposed by said section, and, if the 2-mill tax should be sustained, then that the 5-mill tax voted by the district on the same day that the 2-mill tax was voted throughout the parish, should be declared violative of that section.
 

 We may assume, for the purpose of determining whether or not the levy of the 2-mill tax in controversy voted by the Webster Parish school district is in contravention of the 8-mill limitation on taxes for the support of the public schools imposed by section 10 of- article 10 of the Constitution, that the 10-mill tax, voted by the Heflin school district for constructing and equipping a schoolhouse should be counted, in so far as relates to equipping, a tax for the support of the public school of the district, as contended for by plaintiffs, and, as it is impossible to say what part of that tax should be so counted, we may assume also for the same purpose that all of it should be. We may assume likewise that one-half of the 3-mill tax voted in the Doyline school district for making an addition to the schoolhouse and for the support
 
 *1055
 
 of the school therein should be counted for the latter purpose for which the tax was voted, as contended for by plaintiffs; or we may go even further and assume that all of that tax should be counted for the support of the school in that district. Still, after so assuming, it does not appear that the levy of the 2-mill tax in contest contravenes the 8-mill limitation imposed by said section of the Constitution. This is so because the Webster Parish school district, which voted and is levying the 2-mill tax, has- voted and is levying, including that tax, only 7 mills on the dollar for the support of the schools, and because that district is not affected as to its right to levy taxes for that purpose by the taxes levied by other districts or political subdivisions under the section for the same purpose. In other words, in order to sustain plaintiffs’ contention it is necessary to add to the 7 mills, which are being levied in the Webster Parish school, district, the tax which we have assumed to have been voted, and which we assume is being levied in either the Heflin or the Doyline district, or which was in fact voted and is being levied in the I-Iortman district, for the purpose of supporting the schools, and this, as is the case with respect to the 25-mill limitation, section 10 of article 10 of the Constitution does not contemplate should be done, but to the contrary that section contemplates that each political subdivision authorized to levy this tax may do so up to the limit fixed, without reference to what the others have done. If the interpretation contended for by. plaintiffs is correct, the result would be, as we have heretofore indicated in discussing the 25-mill limitation that, because some enterprising school district, perhaps in a remote corner of the parish, had voted and was levying an 8-mill tax for the support of the schools, a parish wide school district or a parish in which the remote district is located, which saw the need for a parish wide tax for the same purpose, could not vote and levy it. It seems obvious to us that the constitutional convention intended no such result. Nor can it be said that the convention intended that school districts should not exist, for it not only expressly recognizes them in the section, relating to these taxes, but recognizes sub-school districts also. We therefore conclude that plaintiffs’ position cannot be sustained.
 

 With respect to the 5-mill tax, voted by the Hortman school district on the same day that the 2-mill tax in contest was voted by the Webster Parish school district, our conclusion is that plaintiffs’ alternative demand for the nullity of the tax should be rejected, for the reason that the tax is valid. This tax is the only tax voted by the district for the support of the schools thereof, and the number of mills voted and being levied by it is not in contravention of section 10 of article 10 of the Constitution.
 

 The next question to be considered is the one raised by the Gulf Refining Company that the school board of Webster parish was without right to submit the proposition, to authorize it to levy the 2-mill tax, to the .taxpayers of the entire parish, and was without right to levy the tax throughout the parish. We gather from the brief filed in support of this view that the position of the Gulf Refining Company really is that a school board has no right to create a parish wide school district for the purpose of. levying a tax throughout the parish in which the board functions.
 

 The school board of a parish is the governing authority of school districts created by it, and has authority to call elections for the submission of propositions to the taxpayers to authorize their respective districts to levy taxes under section 10 of article 10 of the Constitution. Section 3 of Act 152 of 1920.
 

 The Webster Parish school district was
 
 *1057
 
 created out of tlie territory of the entire parish of Webster by the school board of that parish in 1919. The school board was authorized to create the district out of the territory of the parish under the provisions of Act 81 of 1918. Since the creation of the district, but before the election was called for the voting of the tax, the act of 1918 was repealed by Act 152 of 1920, cited supra, but, by express provision, not so as to affect the existence of districts created under laws in force at the time of the repeal. In fact, it may be said that the act of 1920 provides for the creation of parish wide school districts in the same manner and for the same purpose as did the act of 1918. Section 1, 2, and 4 of Act 152 of 1920.
 

 The Gulf Refining Company, however, argues that the existence of a parish wide school district, created for the purpose of voting and levying a tax, is inconsistent with section 10 of article 10 of the Constitution, and that any act which seeks to authorize the creation of such a district, or the calling of an election therein, to vote a tax, including Act 152 of 1920, is in conflict with said section, and therefore upon the adoption of the Constitution of 1921, under section 1 of article 22 thereof, ceased to exist. The position of that company seems to be that section 10 does not authorize two bodies covering the same territory to levy taxes, under section 10, and that, if a parish wide school district be permitted to do so, and does so, up to the limitation fixed in the section, such action will deprive the parish of its constitutional right to levy taxes, under the section, for school purposes, and, since the Constitution authorizes parishes to levy taxes for those purposes, and does not mention parish wide school districts, that the silence of the Constitution in this respect operates as a prohibition on such districts to vote and levy them.
 

 . We, however, see no inconsistency between section 10 of article 10 of the Constitution and the existence of a parish wide school district. The section expressly mentions school districts and sub-school districts as being among the political subdivisions authorized to levy taxes under the section, and while it does not mention parish wide school districts, yet it does not indicate how largo or small the districts must be, but impliedly leaves the size of them to the legislative branch of the government. As the section mentions school districts and sub-school districts as well as parishes, and endows each with the power of taxation for school' purposes, it necessarily follows that the Constitution contemplates that three classes of political subdivisions, at least, may exist, empowered to levy taxes for such purposes at the same time over the same territory. The fact that the school board may not have subdivided the
 
 entire
 
 parish into small or sub-districts does not alter the'case. Hence .we conclude that the inconsistency contended for does not exist.
 

 In so far as relates to the. danger of a parish wide school district taking away from a parish its right to levy taxes, under the section, for the support of the schools, there is none whatever. We have, in effect, decided that phase of the question in passing on the limitations of 8 and 25 mills.
 

 The next question is one of attorneys’ fees. The tax collector was made a party to this suit, and judgment was prayed for against him and the remaining defendants, decreeing the nullity of the taxes in contest, and ordering him not to collect the same. No injunction was applied for, and, of course, none was issued. The tax collector prays in re-convention for attorneys’ fees.
 

 As this suit is not one for the reduc- _ tion of an assessment, or for the collection of taxes, and, as it is not an injunction suit to prevent the tax collector from proceeding with the collection of taxes, the demand for
 
 *1059
 
 attorneys’ fees should be rejected. Shaw v. Watson, 151 La. 907, 92 So. 375. Tbe cases of Oden v. Industrial Lumber Co., 153 La. 734, 96 So. 549, and Simms Oil Co. v. Flanagan, 155 La. 565, 99 So. 450, cited by tbe tax collector, are not pertinent. The former was a suit to collect a tax, and the latter was an injunction suit to restrain the collection of taxes.
 

 The lower court rendered judgment, decreeing the validity of the 2-mill tax, but in doing so sustained plaintiffs’ alternative demand for the nullity of the 5-mill tax in the Ilortman district, and, though it does not appear to be attacked, annulled the 3-mill tax in the Doyline district. The court also rendered judgment, allowing the attorneys’ fees demanded. The judgment rendered therefore will have to be amended, under the answer to the appeal filed by defendants, and under the appeal taken by plaintiffs so as to conform to the views expressed herein.
 

 For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reinstating said 5-mill tax in said Hortman school district and said 3-mill tax in said Doyline school district, and by rejecting said demand for attorneys’ fees, and, as thus amended, that it be affirmed, plaintiffs to pay the costs of appeal.
 

 O’NIELL, C. X, and BRUNOT, X, dissent, being of the opinion that the parish wide tax of 2 mills is null because it exceeds the limit of 8 mills on all property in the Hortman district and in the Doyline district, in which districts the special taxes for giving additional aid or support to the public schools are not contested.
 

 ST. PAUL, X, dissents and files reasons.