MOISE, Justice.
This is a suit by eighty-four tax-paying voters of Caddo Parish (1) attacking the validity of the creation of a Parish-Wide School District by resolution of the Caddo Parish School Board dated April 6, 1949, and a subsequent confirmatory resolution of said Board dated September 5, 1951; (2) seeking to annul and set aside a bond élection called by said Board on September 5, 1951- for October 30, 1951, in which the qualified voters of Caddo Parish voted a $20,000,000 bond issue and the assumption by the Parish of the debts of seven school districts therein, amounting to $5,198,000; and (3) enjoining the issuance and sale of the bonds aforesaid, 'or, alternatively, such amount thereof as, when added to the debts assumed, exceeds the constitutional limitation of ten per cent. They have further asked for injunctive relief against the abandonment or curtailment of existing school facilities in their respective districts. From a judgment rejecting their demands, plaintiffs appeal.
Litigation involving the affairs of the Caddo Parish School Board is not new to this Court. The Parish itself consists of nine police jury wards, the City of Shreveport being in the southern third of the parish area and covering Ward 4 completely ; the metropolitan area extends into the eastern part of Ward 5 (which borders the Louisiana-Texas line) and into the northerly portion of Wards 6, 7 and 8 *756 (lying south of 'the City and bordering DeSoto and Red River Parishes.) There are no school districts in these five southerly wards of Caddo Parish, other than School District No. 1, which embraces the Shreveport metropolitan area; most of the grade school children and all of the high school children from all-of Wards 7 and 8 and from the eastern portions of Ward 5 and Ward 6 (immediately adjacent to Ward 5 on the south)-are transported to schools in the City of Shreveport. West of the City of Shreveport in Ward 5 there are schools in the Town of Greenwood which also serve the western portion of Ward 6; but save for these, there are no schools in the south end of , Caddo Parish other than those within the corporate limits of Shreveport. On the date of the election attacked, October 30, 1951, the outstanding bonded indebtedness of School District No. 1 was $4,758,000.
The northern two-thirds of Caddo Parish, consisting of Wards 1, 2, 3 and 9, comprehend School Districts 4 (with an indebtedness of $4,000); 5 (with no indebtedness) ; 6 (indebtedness of $30,000) ; 7 (indebtedness of $189,000) ; 9 (indebtedness of $120,000) ; 14 (indebtedness of $25,000) and 15 (indebtedness of $72,000). The total bonded indebtedness of these districts is $440,000. School Districts Nos. 4, 5 and 9 were the subject of an unsuccessful attempt at consolidation in 1947; see Roberts v. Caddo Parish School Board, 213 La. 436; 34 So.2d 916.
It appears from the record that the Caddo Parish School Board has found it necessary to undertake ah extensive overhauling of its school system, due to an unusually rapid growth in the post-war period, as well as in the preceding decade. Following the recommendations of a Citizens Survey Committee, the Board engaged the services of the George Peabody College for Teachers, Nashville, Tennessee (Division of Surveys and Field Services) to make a professional study and expert analysis of the physical needs of the Caddo Parish school system. The Peabody Survey Report, a 240-page book, has been filed in evidence by plaintiffs. Although it seems obvious that this School Board has-.been unswervingly determined for some time to effect, one way or the other,- -consolidation of the schools in the northern two-thirds of Caddo Parish, we are nevertheless not concerned with the findings of fact and recommendations (concurred in by the aforesaid Citizens Survey Committee, for the most part) upon which the Board acted, but merely with the- legality and constitutionality of its actions.
From a legal standpoint, it is unfortunate that the Board’s policy to consolidate and integrate its facilities has coincided with its financial expansion 'program thereby necessitated. The instant litigation seems to have been prompted as much by opposition to consolidation of schools as by a misapprehension of the nature and powers of individual school districts. These latter *758 are areas created only for purposes of taxation; in all respects they are subject to the authority and control of their creator, the school board. The administration of parish schools, whether or not these be situated in any “school district” is vested in the school board* of the parish', subject to supervision and control by the State Board of Education. La.Const. of 1921, art. XII, Sections 4, as amended, and 6.
The basic issue presented by this appeal is whether the creation of a “parish-wide school district” constitutes a consolidation of the smaller school districts, and as such requires the ratification of the voters in each district affected thereby, under LSA-R.S. 17:1374 et seq. Plaintiffs contend that it does, whereas defendant Board invokes the aegis of LSA-R.S. 17:1371, as amended, as specifically authorizing the creation of a parish-wide district, co-existent with individual or consolidated districts.
The initial legislative authority for the creation of a parish-wide school district was Act No. 17 of 1914. This was followed by Act No. 81 of 1918; and the present section of the Louisiana Statutes Annotated— Revised Statutes on this subject, (17:1371) incorporates the third legislative act, No. 152 of 1920. Section 2 of Act No. 152 of 1920 prohibited the creation of a school sub-district as well as the creation of a district which overlapped on any other district; but the right to create a parish-wide district was preserved, despite the existence of other districts in the parish:
“ * * * except that a parish as a whole may be created a school district wherein there exist smaller school districts or parts of smaller school districts, or smaller school districts may be created embracing parts of a parish constituting a school district.”
The co-existence of parish-wide school districts with special school districts was recognized and confirmed by the cases of Hinton v. Winn Parish School Board, 155 La. 666, 99 So. 523, and Louisiana & Arkansas Railway Company v. School Board of Webster Parish, 157 La. 1046, 103 So. 318:
“The right of a parish school board to create a parish, as a whole, a school district, and to create smaller school districts, within its limits, is recognized both by Act 17 of 1914, and Act 81 of 1918.
“A parish-wide school district and the smaller school districts within its limits are separate and distinct political subdivisions of the state, and may therefore exist at the same time, and independently of each other, for purposes of special taxation in giving.additional aid to public schools. * * *
“While section 1 of said Act [Act 152 of 1920] confers authority upon parish school boards, in connection with the powers of special taxation for school purposes, to create school districts ‘composed of a parish, as a whole, of any ward, or any two or more *760 wards, or parts thereof, or of any other part or parts of the parish,’ yet section 2 of said act expressly provides ‘that no school district shall be created under the authority of this act, embracing the whole or any part of the territory of another district, nor shall any school subdistrict be created, except that a parish as a whole may be created a school district wherein there exist smaller school districts, or smaller school districts may be created embracing parts of a parish constituting a school district’ In other words, neither a parish-wide school district, nor the smaller school districts into which it may be divided under section 1 of said act, are considered as overlapping districts. It is therefore clear that the prohibition against overlapping, denounced in section 2 of said act, is directed only against a smaller school district ‘embracing the whole or any part of the territory of another’ smaller school district.” 155 La. 666, 673, 677, 99 So. 523, 525.
“We, however, see no inconsistency between section 10 of article 10 of the Constitution and the existence of a parish wide school district. The section expressly mentions school districts and sub-school districts as being among the political subdivisions authorized to levy taxes under the section, and while it does not mention parish wide school districts, yet it does not indicate how large or small the districts must be, but impliedly leaves the size of them to the legislative branch of the government. As the section mentions school districts and sub-school districts as well as parishes, and endows each with the power of taxation for school purposes,, it necessarily follows that the Constitution contemplates that three classes of political subdivisions, at least, may exist, empowered to levy taxes for such purposes at the same time over the same territory. The fact that the school board may not have subdivided the entire parish into small or sub-districts does not alter the case. Hence we conclude that the inconsistency contended for does not exist.” 157 La. 1046, 1057, 103 So. 318, 322.
Act No. 33 of 1922, which had for its-expressed purpose “to provide for the merging or consolidating of School Districts”, was held in Woodard v. Bienville Parish School Board, 169 La. 831, 126 So. 207, to have repealed by implication (there was an omnibus repealing clause) the prohibition against overlapping of school districts contained in Section 2 of Act No. 152 of 1920. A more comprehensive consolidation act was passed by the Legislature in 1934, Act No. 149. Each of these acts empowered school boards to consolidate upon their own initiative. Then, in 1936 the Legislature re-enacted and amended Section 2 of Act No. 152 of 1920, Act No. 190 of 1936, not only incorporating the whole of said Section 2 but also adding thereto a pro *762 vision for the creation in certain instances of school sub-districts. However, neither Act No. 33 of 1922, nor Act No. 149 of 1934, nor Act No. 190 of 1936 abolished the right of a school board to create a “parish as a whole” a school district.
As a result of Act No. 190 of 1936, this court held in Roberts v. Caddo Parish School Board, 213 La. 436, 34 So.2d 916, that the Board was prohibited from creating a consolidated school district, and that the validating effect of Act No. 313 of 1940 extended “only to such districts as had been created prior to the adoption of that act.” 213 La. 436, 450, 34 So.2d 916, 921. Thereafter, Act No. 357 of 1948 was passed, incorporating verbatim the provisions of Act No. 149 of 1934 and, additionally and for the first time, making mandatory the ratification of any consolidation under the provisions of the Act by majority popular vote and assessment vote of each district affected thereby. Section 5 of Act No. 357 of 1948 provides:
“That all laws or parts of laws in conflict herewith, especially any provision or provisions of Act 152 of 1920, as amended by Act 190 of 1936, be, and the same are hereby repealed.”
It is plaintiffs’ contention that the effect of Section 5 is to make mandatory the ratification (provided for by Section 4) of the creation of a parish-wide school district, on the grounds that it is Act No. 357 of 1948 which authorizes parish-wide school •districts, the provisions of Act No. 152 of 1920 as amended having been superseded thereby.
We cannot agree with this interpretation, in the light of the history of these two statutes. In our opinion it is-obvious that the repealing language in Act No. 357 of 1948 applied only to Section 2 of Act No. 152 of 1920, since it was that section whereof the re-enactment in Act No. 190 of 1936 had nullified the right to consolidate under Act No. 149 of 1934 and since it was Act No. 149 of 1934 which had been re-enacted by Act No. 357 of 1948. We have had parish-wide school districts on our statute books since 1914 and consolidated school districts since 1922 (except from 1936 to 1948) without the argument ever having been advanced that the former were synonymous with the latter. As a matter of fact, the compilation of the Louisiana Statutes Annotated — Revised Statutes of 1950 carried forward all the salient features of both acts without comment on any possible ambiguity between them.
We proceed, therefore, to consideration of the second serious ground urged by this appeal — that the proposed $20,000,000 bond issue exceeds the constitutional and statutory limitations in that: (Í) the authority to issue bonds to 15% of the assessed valuation of the taxable property of a school district is restricted by Section 14(f) of Article XIV of the Louisiana Constitution to “the purpose of acquiring school sites, erecting and equipping school build *764 ings and improving school property” Act No. S4S of 1948 and that for acquiring lands for playgrounds, purchasing, erecting, enlarging or improving school buildings and teachers’ homes, under Section 14(b) of said Article, the 10% limitation contained in the first part of Section 14(f) applies; (2) that the proposed indebtedness, when added to the existing indebtedness of the old districts, exceeded by. $4,071,396.40 the 10% of the assessed valuation contended for by plaintiffs as the basis ’of determining the size of the bond issue [and as to which excess they have prayed alternatively for injunction of the proposed bond issue] ; (3) that since the assumption of the debts of the individual districts by Caddo Parish-does not relieve them of liability therefor, but the property in each remains liable to special taxation until all of its respective debts be paid, the combination of the existing indebtedness with the proportionate part of the proposed $20,000,000 bond issue will result in an excess over the 10% limitation contended for in six out of the seven districts (District No. 4 being the exception); and, finally (4) that the increase in tax millage necessary to retire the proposed bond issue, when added to the present tax rates in each district [for the dual purpose of paying the bonded indebtednesses mentioned supra and maintaining the schools therein], will exceed the 8-miil maximum prescribed by Section 10 of Article X, Louisiana Constitution of 1921, as amended, and they specifically urge that the amendment of this section has reversed the decision in Louisiana & A. Ry. Co. v. School Board of Webster Parish, supra, insofar as that decision sanctioned “pyramiding” of taxation by taxing subdivisions whose boundaries coincided or overlapped.
We take these various contentions in order.
Article XIV, Section 14(b) of the Constitution of 1921 provides in part:
“Except as otherwise herein expressly provided, no bonds shall be issued by any parish for any purpose other than for * * *; nor by any school district for any purpose other than acquiring lands for building sites and playgrounds, and for purchasing, erecting, enlarging or improving school buildings and teachers’ homes, and acquiring the necessary equipment and furnishings therefor; * *
Section 14(f), paragraph 1, of this same article provides:
“No debt shall be incurred and bonds issued therefor by any sub-division hereunder for any one of the purposes herein provided, which, including the existing bonded debt of such subdivision for • such purpose, excepting bonds issued and secured by an acreage tax, bonds issued ttnder paragraph (e) of this Section 14, and refunding bonds issued under paragraph (g) of said Section, shall exceed in the aggregate ten per centum of the assessed valuation of the taxable property of *766 such sub-division, to be ascertained by the last assessment for parish, municipal or local purposes previous to incurring such indebtedness; provided, that the governing authority of parishzvide school districts and of special school districts may incur debt and issue bonds therefor for the ptirpose of acquiring school sites, erecting and equipping school buildings and improving school property, which including the existing bonded debt of such subdivision for such purposes, may ex-' ceed ten per centum but shall not exceed fifteen per centum of the assessed valuation of the taxable property of such sub-division, to be ascertained by the last assessment for parish or local purposes previous to incurring such indebtedness.”
As we interpret this section in the light of common sense, it seems obvious that the enlargement of the limitation to 15% with respect to school districts was meant to apply to any purpose connected with or germane to the acquiring, equipping and improving of school property generally; certainly it would be difficult to conceive of a school without a playground and, in rural isolated areas, of a school without a home for its teachers. We are therefore of the opinion that the language was used only in an attempt to give the broadest possible scope to the provision and should not be construed by way of limitation, but rather by way of illustration.
Our conclusion in this respect disposes of plaintiffs’ second contention, since under the 15% figure the total of the existing indebtedness and the proposed indebtedness (assuming arguendo that the former must be added to the latter) falls short of the limitation thereby arrived at. See infra.
The third contention is specifically answered by Sub-paragraph (1) of Section 14(k) of Article XIV, which provides that,
“(1) The limitation contained in Section 14(f) [i. e. as to percentage of assessed valuation] shall not apply to debts assumed in accordance with authority contained in this paragraph (k) and Act 164 of 1932, or any general law authorizing such assumption *
The final contention under this section is at best premature. While it is our opinion that “pyramiding” has been prohibited by Act No. 83 of 1934, amending Const.1921, art. 10, § 10, which in that respect has reversed the holding in Louisiana & A. Ry. v. School Board of Webster Parish, supra, nevertheless, from a practical standpoint it is impossible to determine in advance whether the 8-mill limitation will be violated until an actual levy is made to retire the bond issue. As a matter of fact, it is the avowed intention of the Board not to issue all the bonds immediately, and other factors, such as a greater annual rate of increase in assessment valuations in the Shreveport area than in other areas, will operate to the alleviation of the tax load on these areas. In any event, we cannot *768 dispose of an issue on theoretical probabilities.
The third issue presented by this •appeal concerns the constitutionality of the assumption of indebtedness of these school districts by Caddo Parish, voted at the election of Oct. 30, 1951, and of the transfer to it of all their “rights, revenues, resources, jurisdiction, authority and powers with respect to the indebtedness so assumed for the period of such assumption” by resolution of the School Board dated Nov. 7, 1951. The legality of the procedure by which the election was •called, canvassed, promulgated and given effect is also challenged.
The Constitution in clear and unequivocal terms, Article XIV, Section 14(k), authorizes the assumption of such debts. By LSA-R.S. 39:666 the revenues of each area (whereof the indebtedness is assumed under this authorization) are obliged to be used by the parish to retire such existing indebtedness. In effect, all that is accomplished is that the contractual obligees on the bonds are given the benefit of a secondary obligor and the secondary obligor becomes the administering agent for the original obligor' — the school district:
LSA-R.S. 39:666. “A. Upon the adoption of the resolution provided for in the preceding section [i. e. in the event of a majority vote in favor of the assumption the governing authority shall by resolution assume the debt], the parish shall succeed to and become charged with all the liabilities and duties of the district with respect to the assumption of the debt and it shall succeed to and be vested with all the rights, revenues, resources, jurisdiction, authority and powers, with respect to the debt assumed, for the period of the debt assumption. The governing authority is empowered and obligated to apply such revenues and resources of the district, the debt of which has been assumed, to the payment in principal and interest of the entire debt assumed.” (Italics mine.)
The resolution under attack tracks the above language almost verbatim:
“That said above described obligations shall be recognized and treated as the obligations of Caddo Parish in accordance with the terms thereof in all respects as though said obligations had been originally authorized and incurred by said parish, and said parish shall succeed to and become charged with the liabilities and duties of each school district with respect to the indebtedness of said district so assumed and shall succeed to and be vested with all the rights, revenues, resources, jurisdiction, authority and powers with respect to the indebtedness so assumed for the period of such assumption, but nothing herein contained shall operate to extinguish the corporate existence of said school district until all of its indebtedness so assumed shall have been paid.”
*770 Again, it must be borne in mind that a school district is merely a taxing area, and not a governing authority or entity.
Act No. 164 of 1932 is the general law setting up the procedure for the assumption by a parish of the outstanding bonded debt of road, drainage, irrigation, levee or school districts wholly within the parish, and its purpose was declared to be “in order to carry into effect the provisions of subdivision (k) of Section 14 of Article XIV of the Constitution”. It was amended in several respects by Act No. 220 of 1946, and Section 2, as thus amended, was further amended by Act No. 358 of 1948 to authorize the Parish School Board to submit the question of assumption of debt of school districts:
“provided that the Parish School Board shall also have the right and power to submit to the qualified taxpaying voters the question of assuming the debt of any one or more school districts in the same manner as is provided for the Police Jury.” (Italics mine.)
The argument that “governing authority” as used in LSA-R.S. 39 :662 et seq., when considered in relation to an election involving the assumption of school district indebtedness, means “police jury” — in Cad-do Parish — is specious, for the simple reason that the governing authority of parish schools is not the police jury, but the school board. It seems logical to interpret “in the same manner as is provided for the Police Jury”, taken together with the general repealing clause contained in Act 358 of 1948, as conferring upon the school board, in connection with any election which it is authorized to call, every right which the Police Jury could exercise, were it to have called such election. This includes the canvassing and promulgation of the results, and if they so authorize, the right to declare by proper resolution assumption of the debt on behalf of the parish and the right to pass the tax required to pay the debt thereby assumed. It seems obvious that LSA-R.S. 39:515, 39:516 and 39:665, when referring to the “governing authority”, refer to the governing authority which has called the election.
For the reasons assigned, the judgment appealed from is affirmed, appellants to pay all costs.
HAWTHORNE, J., concurs in the decree.